Filed 12/19/23  In re S.R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.R. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.G.,<br><br>Defendant and Appellant. | F085566<br><br>(Super. Ct. Nos. JD132783-00, JD132784-00, JD132785-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Susan M. Gill, Judge.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Levy, J. and Meehan, J.

Appellant A.G. (mother) is the mother of now 18-year-old S.R., 12-year-old N.G., and 11-year-old Juan G. (collectively "the children"), who are the subjects of this dependency case. In September 2022, mother filed a petition under Welfare and Institutions Code section 388[1] asking the juvenile court to terminate a legal guardianship for the children that was established through dependency proceedings. The juvenile court denied mother's section 388 petition on January 3, 2023.

Mother appealed from the juvenile court's orders denying her modification petition. After reviewing the juvenile court record, mother's court-appointed counsel informed this court he could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).) Mother filed a letter setting forth various arguments that her rights were violated by alleged errors by the juvenile court.[2]

We conclude mother failed to set forth a good cause showing that any arguable issue of reversible error arose from the section 388 petition hearing. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2014, the juvenile court adjudged then nine-year-old S.R., three-year-old N.G., and two-year-old Juan dependent children and removed them from parental custody after sustaining allegations that the children were at substantial risk of

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     This case pertains to mother's appeal only. N.G. and Juan G.'s father, J.G. (father), filed a separate appeal in case No. F085772 as to N.G. and Juan G. only. Father's court-appointed counsel also informed this court he could find no arguable issues to raise on father's behalf. This court granted father leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error existed. (*Phoenix H.*, *supra*, 47 Cal.4th 835.) Father did not respond, and his appeal was consequently dismissed.

suffering serious physical harm as a result of unsafe living conditions and mother's substance abuse. The juvenile court ordered mother to participate in family reunification services. Mother's reunification plan required her to participate in counseling for substance abuse and parenting, and mother was to submit to random drug testing. The children and mother were also to participate in weekly supervised visitation.

During the reunification period, mother failed to enroll in substance abuse counseling, but she completed nine parenting classes and nine substance abuse classes while incarcerated for approximately one month. Mother submitted to random drug testing periodically, however, she missed multiple tests, resulting in presumptive positive results. The children were placed with their maternal grandmother and two older dependent siblings, and they were considered stable in the placement.

At the six-month review hearing, held on July 21, 2015, the juvenile court found mother made no progress in alleviating the causes for the children's out-of-home placement, and it terminated mother's family reunification services. A section 366.26 hearing was set for Juan and N.G. on November 17, 2015. A 12-month review hearing was scheduled for S.R. because family reunification services were continued for his father, Jorge R.[3] On August 13, 2015, family reunification services were terminated for Jorge R., and the juvenile court set a section 366.26 hearing for December 11, 2015, as to S.R.

The section 366.26 report prepared by the Kern County Department of Social Services (department) recommended that the maternal grandmother be appointed as the legal guardian for the children. She was unwilling to commit to a plan of adoption because she hoped the children's parents would be able to address their issues and regain custody in the future.

---

[3]    Jorge R. is the father of S.R. and mother's two eldest children not at issue in this appeal.

3.

At the section 366.26 hearing held on January 20, 2016, mother was not present and her counsel made no objection to the recommendation for legal guardianship. The juvenile court found that there was clear and convincing evidence that the children were residing with a relative who was unwilling to adopt the children due to exceptional circumstances. A permanent plan of legal guardianship was ordered for the children, and the maternal grandmother (the guardian) was appointed as the children's legal guardian. Visitation between mother and the children was ordered to occur weekly for two hours with supervision as the legal guardian deemed necessary. The guardian was also provided the discretion to increase the parents' visitation if deemed appropriate. The juvenile court retained jurisdiction over the children pursuant to section 366.4.

On January 2, 2018, mother filed a section 388 petition requesting that the juvenile court order her visitation to occur weekly for four hours on Saturday afternoons. The petition also requested an order requiring the guardian to keep mother informed of medical, educational, and other important life events. The juvenile court granted mother's request after finding good cause to expand her visitation.

Mother filed a second section 388 petition on August 13, 2021, which requested that the legal guardianship be terminated and the children be returned to her custody. The petition alleged that the guardian was using "severe corporal punishment" and refusing to advise mother of medical and educational events. Mother claimed the children were suffering "serious emotional damage" that was "evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior" due to the guardian's conduct. In an attachment to the petition, mother alleged that the guardian had failed to provide the children with mental health services and S.G. wanted to live with mother. She further alleged that the children reported excessive discipline from the guardian, which resulted in marks and bruises being inflicted on the children.

On September 9, 2021, mother filed a third section 388 petition. The petition included additional information regarding mother's allegations that the guardian utilized

4.

excessive discipline on the children. Mother indicated that she observed injuries to the children in February 2021 and May 2021. She also claimed that the guardian "ha[d] in the past displayed symptoms of suffering from … mental health issues." Mother concluded her request by asking that the juvenile court order the guardian to complete a mental health evaluation, parenting program, anger management course, and batterer's prevention program.

The juvenile court found that mother made a prima facie showing on her petition to terminate the guardianship, and an evidentiary hearing was set for December 14, 2021. The evidentiary hearing was continued multiple times for additional investigation at the request of mother and the guardian, and separate minor's counsel were appointed for the children in April 2022.

The department filed multiple reports in response to mother's section 388 petition, which recommended that the children remain with the guardian. On December 3, 2021, a social worker completed a visit to the guardian's home. The guardian reported that there were arguments with mother about the time, place, and manner of visits, and the children's school was willing to give a statement about the children's behaviors after visits. N.G. was in fourth grade, and she stated that she wanted to live with mother. Juan was in third grade, and he indicated that he wanted to stay in the home with the guardian. Both Juan and N.G. explained that their mother "hates" the guardian, and this made them feel sad.

The social worker visited mother's home on December 6, 2021. Mother informed the social worker that she completed a three-month residential substance abuse program in February 2018 and a parenting program in May 2016. Mother claimed she did not have an issue with substance abuse when the children were removed, and she stated they were removed due to "housing issues" while living with a relative. Mother's adult daughter, who previously lived with the guardian, was the individual that first reported

abuse and spanking by the guardian to mother. There was a three-year-old sibling of the children's that lived with mother.

On December 8, 2021, S.G. was interviewed by the social worker at his school. He explained that the information in mother's section 388 petition took place over a period of seven to eight years. S.G. stated that the information was mostly true, but it was also exaggerated. He was in his junior year of high school, and he was not certain how living with his mother would be. S.G. did not know how mother would be able to handle all of the children because she was already aggressive with only one child in her care. He felt that mother would give him more freedom, and there would be less stress on the guardian if they returned to mother. S.G. disclosed that the guardian used to "hit the kids with her hand or the belt," but he denied that the guardian ever hit him.

Juan was also interviewed at his school on the same date. He indicated that he wanted to stay with the guardian. Juan also stated that he used to receive "spankings with the belt," but he reported that they were no longer disciplined physically. He was unable to remember an exact date, but he stated that the physical discipline stopped "a long time ago." The social worker then spoke to N.G., who explained that the guardian disciplined the children by taking away television. She denied ever receiving a spanking by a belt. N.G. stated she would miss her family if she went to live with mother because her aunts and uncles did not like mother.

The social worker received a text message from S.G. on February 26, 2022. S.G. stated that he did not want to live with mother or the guardian. He did not trust mother because she manipulated him in the past to hate the guardian. S.G. did not want to live with the guardian because he felt there would be tension between he and his siblings about who they wanted to live with. On February 28, 2022, the social worker confirmed with S.G. during an in-person interview that he did not want to live with mother or the guardian. S.G. also indicated that his younger siblings wanted to live with mother.

6.

On April 5, 2022, mother's adult daughter told the social worker that mother had a gun in her home, and mother reportedly offered it to the adult daughter in case things got "out of hand" at a party in her home. The guardian reported that she no longer felt safe due to mother's harassment and possession of a gun. Mother began missing some of her scheduled visits from April 2022 to July 2022. In May 2022, N.G. reiterated that she wanted to live with mother, and Juan and S.G. confirmed that they wanted to remain with the guardian.

An evidentiary hearing on mother's section 388 petition began on August 1, 2022. Mother was not present, and her appointed counsel proceeded with the hearing on her behalf. Counsel for the parties stipulated to the juvenile court examining the children outside the presence of the parents, the guardian, and their counsel. The visitation orders for the guardianship would remain in place while the hearing was continued for the parties to review the testimony.

S.G. testified in chambers with the department's counsel and his appointed counsel present. He testified that the guardian told him that mother was "not ready [to have] … her kids back yet, but she wants her to have her kids … back but she's not ready .…" The guardian told this to S.G. in private, and she did not make the statement around the other children. Mother told S.G. during visits that the guardian was "lying, deceiving, and basically wants to keep [the children] away from her." S.G. testified that he was not visiting with mother at the present time because "it just brings more drama into [his] life .…"

Juan testified that he had never heard the guardian speak negatively about mother. However, Juan explained that his mother stated negative things about the guardian. Mother told the children than the guardian was lying, but he felt that his mother was the person who was lying. Juan testified that he wanted to live with the guardian. He did not want to see mother anymore because she would always hit his brother and sister. Juan

also claimed that he witnessed mother hit his three-year old sibling on his buttocks and back. Juan was worried that mother might hit him if he went to live with her.

N.G. testified that the guardian did not like that mother still spent time with father. Mother would often tell N.G. that statements made by the guardian were not true. N.G. wanted to spend more time with mother, but she also wanted to spend time with the guardian. N.G. testified that she would feel sad if Juan lived somewhere else, and she felt safe in the guardian's home. She was not afraid of being hit by mother, but she had witnessed mother hit her three-year-old sibling on the arm and face to get his attention. The juvenile court ordered the preparation of a transcript to allow the parties and their counsel to review the children's testimony at the next hearing. After hearing testimony from the children, the juvenile court set a continued section 388 hearing for September 6, 2022.

On August 5, 2022, mother's counsel filed a request for an ex parte hearing due to mother's request for appointment of new counsel. Mother's counsel indicated that there was an "irremediable breakdown in the attorney-client relationship." An ex parte hearing was held on August 9, 2022, and mother was not present. Mother's counsel was relieved, and a new attorney was appointed to represent mother.

Mother filed a fourth section 388 petition on September 2, 2022. The petition requested that the juvenile court "[r]escind" the guardianship and place the children in mother's care. In an attachment to the petition, mother provided certificates of completion for a substance abuse program from February 2018 and parenting program from May 2016. Mother also provided a declaration alleging that Juan and N.G. informed her about an incident of physical abuse by the guardian. Mother claimed that the guardian pinned Juan to the ground during an argument, and mother observed bruising to the upper portion of Juan's cheek, neck, and right side of his face. She also observed a laceration on Juan's lip. On September 2, 2022, the juvenile court found that mother's petition was "superfluous" because a hearing was already set on mother's prior

8.

petitions. Mother's counsel was to provide notice to all counsel if new evidence was to be presented.

Mother's counsel made an ex parte request on September 26, 2022, that the children be made available for testimony at an upcoming hearing on the section 388 petitions. Her counsel wished to question the children about claims of physical abuse and being withdrawn from school, activities, and counseling. On September 27, 2022, the juvenile court denied the request because it was "not persuaded" that change of counsel required the children to testify again. On December 14, 2022, mother's counsel filed an ex parte request for a hearing to change the time of visitation after mother and the guardian were unable to resolve a conflict as to mother's work schedule. The juvenile court held a hearing on December 22, 2022, and mother's request was denied.

After multiple continuances, the juvenile court held the continued evidentiary hearing on mother's section 388 petitions. Mother and the guardian were both present and represented by their appointed counsel. The juvenile court had read and considered the reports prepared by the department.

Mother provided testimony in support of her request, and the juvenile court admitted photographs of alleged injuries to the children that were taken by mother. Mother's counsel also introduced progress reports and certificates of completion for mother's parenting and substance abuse programs from 2016 and 2018. Mother testified that she believed the children should be returned to her custody because she was able to provide a safe and nurturing environment for them.

The guardian testified that mother never asked her about the children's medical appointments or school events. She also indicated that mother attended only half of her visits with the children. The guardian was no longer willing to supervise mother's visits at a park because confrontations would occur after mother interfered with the guardian's attempts to give instruction to the children. Finally, the social worker testified that she asked the children if they were hit "all the time" by the guardian. The social worker was

9.

aware of mother's allegation that the children were hit with a belt and back scratcher, but she did not ask the children if they were hit by those objects.

Mother's counsel argued that a change in circumstances existed since the guardianship was ordered in January 2016. Her counsel argued that mother was successfully caring for her now four-year-old son, and he also asserted that there was evidence of physical abuse by the guardian. His argument concluded by requesting that the petition be granted to terminate the guardianship and return the children to mother's care. Counsel for the children and the department argued that mother's request for custody should be denied.

After hearing argument from all counsel, the juvenile court proceeded to its ruling on the section 388 petitions. The juvenile court ruled as follows:

> "I do find there's been a change of circumstances since the guardianship was ordered. I also find it would not be in the children's best interests to be placed with … mother at this time so I'm going to deny the modification request. However, I do have continuing jurisdiction over this guardianship, and in that regard, I'm going to order that all three of the children need to be in mental health services at least monthly. They have been in the middle of a tug of war between [the guardian] and mother."

The juvenile court also ordered that mother's visitation occur on a different day to allow mother's work schedule to be accommodated. The guardian was ordered to notify mother of school events, performances, and awards. Mother was allowed to attend the events without contacting the children or interfering with the event. The guardian was also ordered to notify mother of any nonroutine medical appointments, and she was not to use any physical punishment on the children. Mother's modification request pursuant to section 388 was denied, and she was not permitted to file an additional section 388 petition absent a specific and compelling change of circumstances for 12 months.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, the juvenile court conducted a hearing under section 388. Section 388 allows a parent to petition the court to change a prior order on the grounds that there is new evidence or circumstances have changed such that the proposed new order would better serve the child's interests. The parent bears the burden of proof by a preponderance of the evidence. (§ 388; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

In assessing the petition, the juvenile court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) When determining whether a modification under section 388 would be in the best interests of the child, courts have considered several factors, including but not limited to: "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.)

We review the denial of a section 388 petition after an evidentiary hearing for abuse of discretion. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." ' " (*Id.* at pp. 318–319.) " 'The denial of a section 388 motion rarely merits reversal as an abuse of discretion.' " (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.) Where there is conflicting evidence, we reverse only if the evidence compels a finding for the appellant as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1529.)

11.

Having reviewed mother's supplemental brief, we find mother has not made a showing of good cause that an arguable issue exists. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 846.) Mother makes several claims of error as follows: 1) the juvenile court lacked jurisdiction to hear the case after the guardianship was established; 2) there was an improper delegation of judicial authority to the guardian for evidentiary determinations; 3) no conflict existed to require separate appointment of counsel for the children; 4) mother was deprived of the ability to defend herself from allegations in the social worker's reports; 5) information outside of the record was relied upon by the court; 6) appointment of counsel for the guardian was improper; 7) denial of mother's request for further testimony by children was in error; 8) the court's failure to find that termination of guardianship was in the children's best interest was in error; and 9) the order preventing mother from filing additional section 388 petitions absent a specific and compelling change of circumstances violated her right to petition the court.

Mother's letter brief furnishes no valid argument with supporting legal authorities for these purported claims of error. (See *In re Sade C.*, *supra*, 13 Cal.4th at p. 994 [parents must " 'present argument and authority on each point made' "].) Nor does mother show that these claims of error, assuming they were true, constitute a basis for reversing the underlying orders. Our review of the challenged orders confirms counsel's determination that no arguable issues exist.

Mother's various claims of error lack supporting legal authority and do not constitute arguable issues on appeal. First, the juvenile court had continuing jurisdiction over the children after the guardianship was established. Section 366.4, subdivision (a) provides that "[a]ny minor for whom a guardianship has been established resulting from the selection of implementation of a permanency plan pursuant to [s]ection 366.26 … is within the jurisdiction of the juvenile court."

Next, the juvenile court did not provide the guardian with the ability to make evidentiary determinations. Both mother and the guardian were represented by counsel

and capable of objecting to the statements contained within the social worker's reports. Mother and the guardian both provided testimony to the juvenile court, and the juvenile court considered the exhibits and testimony provided by mother in reaching its decision. Mother's counsel agreed to allow the juvenile court to obtain testimony from the children in chambers, and there was no sufficient showing that mother's new allegations required additional testimony from the children. The social worker's reports also included references to mother's request to hold visits at a restaurant instead of a park, and the juvenile court properly obtained that information from the record.

Furthermore, appointment of counsel for the guardian and separate counsel for the children was permitted by section 317 and Supreme Court precedent. (See *In re Celine R.* (2003) 31 Cal.4th 45, 56, citing *Carroll v. Superior Court* (2002) 101 Cal.App.4th 1423, 1428 ["If an appointed attorney is representing multiple minors in a dependency proceeding, and an actual conflict of interest between the minors arises, the attorney is obliged to withdraw from representing the clients [citation] and the court is required to relieve the attorney and appoint new counsel."]; see also section 317, subdivision (b) ["When it appears to the court that a parent or guardian of the child is presently financially unable to afford and cannot for that reason employ counsel, and the child has been placed in out-of-home care, or the petitioning [department] is recommending that the child be placed in out-of-home care, the court shall appoint counsel for the parent or guardian, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section."].)

In the present case, the juvenile court determined that mother did not prove that the children's best interests were served by granting her request. Mother provided evidence that she completed parenting and substance abuse programs several years earlier. These facts were understood and acknowledged by the court. However, it is irrelevant that there may be evidence which would support a conclusion contrary to that of the juvenile court. (*In re K.B.* (2009) 173 Cal.App.4th 1275, 1292.) The court denied

13.

mother's section 388 petition because it did not find that termination of the guardianship was in the children's best interests. Mother had yet to proceed beyond supervised visitation with the children, and the guardian had been the most consistent source of stability in the children's lives. Thus, it cannot be said that the juvenile court's denial of the request to terminate the guardianship was in error.

Finally, mother was not prevented from filing a section 388 petition, the juvenile court merely ordered that any such filings must present a "specific and compelling change of circumstances." This requirement was reasonable and proper guidance for mother given her filing of several unnecessary petitions over the last few years.

In sum, mother has not raised any arguable issues stemming from the section 388 hearing. Further, though we are not required to, we have reviewed the record as it relates to the hearing under section 388, and we have found no arguable issues for briefing. (*Phoenix H.*, *supra*, 47 Cal.4th at pp. 841–842.) Accordingly, we dismiss the appeal.

## DISPOSITION

This appeal is dismissed.